Elizabeth H. Rader (SBN 184963)
elizabeth.rader@alston.com
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, California  94306
Tel: (650) 838-2000

Valarie Williams (*Pending Pro Hac Vice Admission*)
valarie.williams@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel:  (404) 881-7000
Fax:  (404) 881-7777

Attorneys for Defendant
AUTO AUCTION SERVICES CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COPART, INC., a California corporation, | Civil Action No. CV-08-3393-JSW |
| Plaintiff, | **AASC'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| AUTO AUCTION SERVICES CORP., a Maryland corporation, | Date:        October 17, 2008<br>Time:        9:00 a.m.<br>Judge:      Judge Jeffrey S. White<br>Courtroom:  2 |
| Defendant. | |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 17, 2008 at 9:00 a.m., in Courtroom 2 of this

Court located at 450 Golden Gate Ave., San Francisco, California, or as soon thereafter as the matter

may be heard, Defendant Auto Auction Services Corporation ("AASC") will and does move this

Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based upon this Notice of Motion, Memorandum in Support of Motion to Dismiss, and other papers and pleadings on file and on such argument as may be presented to the Court at or prior to the hearing on this motion.

1

## <u>TABLE OF CONTENTS</u>

2
Page

3

I.    SUMMARY OF THE ARGUMENT ................................................................ vii

4

II.   SUMMARY OF THE COMPLAINT ................................................................ 1

5

III.  STANDARD FOR DISMISSAL ................................................................ 2

6

IV.   ARGUMENT ................................................................ 3

7
8
      A.   Copart's Sherman Act Section 1 Claim against AASC Should Be
           Dismissed. ................................................................ 3

9
10
           1.   Copart's Sherman Act Section 1 Claim Should Be
                Dismissed Because It Fails to Allege a Conspiracy ........................... 3

11
           2.   Copart Also Fails to Allege an Unlawful Restraint of Trade ................ 6

12
      B.   Copart's Section 2 Claim against AASC Should Be Dismissed .................. 7

13
14
           1.   There is No Independent Legal Duty to Deal with Any
                Entity without a Prior Course of Voluntary Dealing ........................ 8

15
           2.   Copart's Complaint Fails to Allege a Section 2 Claim under
                any Theory ................................................................ 9

16
17
      C.   Copart's Sherman Act Claims Should Be Dismissed Because It
           Fails to Allege Facts to Support the Existence of its Alleged
           Relevant Market ................................................................ 10

18
19
      D.   Copart's Sherman Act Claims Should Be Dismissed Because It
           Fails To Allege Facts Sufficient to Establish Antitrust Injury ............ 12

20
21
      E.   Copart's Pendant State Law Claims Fail Because They Are
           Premised Upon the Federal Antitrust Law Violations ....................... 13

22
V.    CONCLUSION ................................................................ 14

23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

# Cases

5

*AD/SAT, Div. of Skylight, Inc. v. Associated Press,* 181 F.3d 216 (2d Cir. 1999)...............................5

6

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) .................... 12, 13

7

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n.*, 370 F. Supp. 2d 213, 217 (D.D.C. 2005)................7

8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)........................................8

9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.
519, 526-27 (1983)................................................................................................................ 13

10

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ...................................................... 2, 3, 4, 5

11

*Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) ........................................................ 11, 12

12

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ........................................ 13

13

*Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2001) ......................................... 14

14

*Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 166 F. Supp. 2d 891, 896
(S.D.N.Y. 2001) ....................................................................................................................... 11

15

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984).......................................3

16

*Corwin v. L.A. Newspaper Serv. Bureau, Inc.*, 484 P. 2d 953, 959 (Cal. 1971)................................ 13

17

*Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 673 (D.C. Cir. 2005).....................................8

18

*Covad Commc'ns Co. v. BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004)............................ 8, 9

19

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 807 (6th Cir. 1988) ..................... 12

20

*Custom Auto Body, Inc. v. Aetna Cas. & Sur. Co.*, No. 78-0301, 1983 U.S. Dist LEXIS
14941 (D.R.I. Aug. 3, 1983)......................................................................................................7

21

*DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ......................... 2, 5

22

*Elecs. For Imaging, Inc. v. Coyle*, No. C01-4853, 2005 WL 1661958, at *3 (N.D. Cal.
July 14, 2005)........................................................................................................................... 11

23

*Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986).......................................................................4

24

*Found. For Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d
521, 530 (6th Cir. 2001)............................................................................................................2

25

*Fuentes v. S. Hills Cardiology*, 946 F.2d 196, 202 (3d Cir. 1991) .....................................................6

26

27

28

*Garshman v. Universal Res. Holding, Inc.*, 824 F.2d 223 (3d Cir. 1987) ........................... 5

*Go-Video, Inc. v. Matsushita Elec. Indus. Co. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)* No. MDL-765, 1990 U.S. Dist. LEXIS 19207, at *66 (D. Ariz. July 26, 1990) ................................................................................... 6

*Kendall v. Visa U.S.A. Inc.*, No. C04-04276, 2005 U.S. Dist. LEXIS 21449, at *5 (N.D. Cal. July 25, 2005), *aff'd* 518 F.3d 1042 (9th Cir. 2008) ............................. 2, 3, 4, 5

*Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) ...................................... 4, 5

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003) ....................... 14

*Lawlor v. Nat'l Screen Serv. Corp.*, 270 F.2d 146, 154 (3d Cir. 1959)................................ 6

*Les Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ............... 2, 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n. 21 (1986)............ 4

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810-11 (9th Cir. 1988)................................ 2

*Metronet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004)............................... 8

*Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 379 (E.D.N.Y. 2002).................... 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)................................... 4

*Morrison v. Viacom, Inc.*, 78 Cal. Rptr. 2d 133, 135 n. 1 (Cal. Ct. App. 1998)................... 14

*Nationwide R.A.C. Sales, Inc. v. Ford Motor Co.*, No. C96-2877, 1997 U.S. Dist LEXIS 1808, at *10 (N.D. Cal. Feb. 20, 1997)................................................................. 6

*Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996) .................................................. 3

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985)................................................................................................................. 6

*Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988) ............................... 4

*Pa. ex. rel. Zimmerman v. Pepsi Co., Inc.*, 836 F.2d 173, 183 (3d Cir. 1988) ..................... 6

*Paladin Assoc., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1162 n. 21 (9th Cir. 2003) ...................... 10

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ............................................................. 5

*Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1206 (7th Cir. 1981) ............................ 7

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993) ................................................................................................................. 11

*Rickards v. Canine Eye Registration Found., Inc.*, 783 F.2d 1329, 1332 (9th Cir. 1986).................. 3

*Rutman Wine Co. v. E&J Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987)........................ 2

*Suburban Mobile Homes, Inc. v. AMFAC Cmtys., Inc.*, 161 Cal. Rptr. 811, 815 (Cal. Ct. App. 1980) ........................................................................................................ 13

*Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003) .................................................... 2

*Texaco Inc. v. Dagher,* 547 U.S. 1 (2006) ..................................................................... 6

*Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954) ........................... 3

*Transamerica Computer Co. v. Int'l Bus. Machs.*, 698 F.2d 1377, 1382 (9th Cir. 1983) ............... 7, 9

*United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) ........................................... 8

*United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 402-04 (1956) ................................ 10

*United States v. Yellow Cab Co.*, 332 U.S. 218, 225 (1947) .......................................... 10

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) ........................................................................................................ 8, 9

*Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) .......................... 10

*Williams ex rel. Tabiu v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) ................................ 2

## Statutes

15 U.S.C. § 1 .............................................................................................................. 3

15 U.S.C. § 2 .............................................................................................................. 7

Cal. Bus. & Prof. Code § 16720 ................................................................................ 13

Cal. Bus. & Prof. Code § 17200-17210 ..................................................................... 14

## Rules

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 2

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## I.    SUMMARY OF THE ARGUMENT

The antitrust laws were not intended to be used as a hammer in business negotiations between buyers and sellers.  Yet at its core, Copart, Inc.'s ("Copart") Complaint is a dispute over the price charged by Auto Auction Services Corporation ("AASC") to Copart for its product.  Copart claims that it is the victim of a group boycott, but has not alleged sufficient facts to show either an agreement by any "group," or that it has been subject to a "boycott."  Rather, Copart alleges that Defendant AASC, a technology joint venture company, offered Copart access to its inventory management system at a price that Copart found unacceptable.  Courts have repeatedly rejected attempts by a single business to use an antitrust lawsuit to gain leverage at the bargaining table.

Copart fails to plead facts sufficient to support the necessary elements of a Sherman Act Section 1 claim for the following reasons**:** (1) Copart's allegation that AASC is a joint venture, owned by shareholders that are competitors of Copart, coupled with only vague allegations of comments from unnamed sources, does not support an antitrust conspiracy claim; and (2) Copart's claim that AASC's alleged price for its product is "tantamount to a refusal to deal" has no factual support in the Complaint.  Copart's Section 2 claim should be dismissed because: (1) Copart does not allege a prior course of dealing or any other facts to negate the presumption that an entity is free to deal with whomever it chooses, regardless of market power, and (2) Copart does not allege that AASC itself even competes, much less has market power, in the alleged relevant market.

Additionally, Copart's purported relevant market – vehicle auction services *utilized by fleets and finance companies* – is insufficient.  Copart provides no factual support as to why auction services utilized by dealers, manufacturers, or other used vehicles sellers are excluded from the relevant market.  Likewise, Copart fails to allege antitrust injury.  Its complaint focuses on a single contract term, which only benefits its bottom line.  This complaint is not about harm to competition, it is about individualized harm to Copart.  Thus, Copart's Section 1 and 2 claims must be dismissed.

Finally, each of the state law claims alleged by Copart specifically requires proof of an underlying wrong or anticompetitive harm.  Because Copart has no valid claim under Section 1 or 2 of the Sherman Act, these state law claims necessarily fail.

## II.    SUMMARY OF THE COMPLAINT

In 1997, AASC was formed to establish an electronic inventory management system that could be utilized by members of the auto industry to efficiently and effectively consign used vehicles to auction locations for resale. (Complaint ¶ 48).  AASC's investors consist of several physical auction companies that sell used "whole-car" vehicles in the United States.  (Complaint ¶ 22).  In fulfilling its primary objective, AASC created the AutoIMS system.  (Complaint ¶ 49).  AutoIMS is a standardized program that allows fleets and finance companies to consign their vehicles to a physical auction location that uses the AutoIMS system.  (Complaint ¶ 49)  In addition to facilitating consignments, AutoIMS allows users to track and manage vehicles through each step of the auction process and create a variety of different reports.  (Complaint ¶ 32, 50).  Because of the benefits of the AutoIMS system and the efficiencies afforded to its users, several fleets and finance companies began to use the AutoIMS system to consign vehicles to auction locations. (Complaint ¶ 32, 50).

Copart is a very successful multi-national publicly-traded company with over 132 locations in North America and is one of the leading providers of "salvage" vehicle auction services. (Complaint ¶ 2, 3, 9).  In July of 2007, representatives from Copart first made contact with AASC to request access to the AutoIMS system.  (Complaint ¶ 53).  AASC's chief executive officer, Don Meadows, provided Copart's representative with the relevant terms and price for access to the AutoIMS system.  (Complaint ¶ 53).  Unsatisfied with the terms, Copart refused AASC's offer and continued to request access at a lower price throughout the winter of 2007 and spring of 2008. (Complaint ¶ 54).  When AASC refused, Copart filed the instant complaint to coerce AASC into providing access at a lower price.

In the Complaint, Copart alleges that the price and terms offered to it by AASC result from the "influence" of AASC's shareholders and are "tantamount to a denial of access to AutoIMS." (Complaint ¶ 53, 69).  In conclusory fashion, Copart alleges that AASC's actions constitute a group boycott, refusal to deal, and an anticompetitive denial of access to an essential facility in violation of Section 1 and 2 of the Sherman Act.  (Counts One and Two).  In addition to its federal claims, the Complaint contains multiple allegations of pendant California State Law violations.  (Counts Three through Five).

1

### III.    STANDARD FOR DISMISSAL

2        Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court should grant a motion to

3   dismiss when the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its

4   face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Williams ex rel. Tabiu v.*

5   *Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) .  The Complaint must contain allegations with

6   respect to all of the material elements of the claims asserted, *Tahfs v. Proctor*, 316 F.3d 584, 591 (6th

7   Cir. 2003) , and present enough factual allegations to "raise [the] right to relief above the speculative

8   level." *Twombly*, 127 S. Ct. at 1965.  When evaluating whether a Complaint contains the requisite

9   allegations, a court is not "bound to accept as true conclusory allegations of law or legal conclusions

10  couched as a factual allegation."  *Kendall v. Visa U.S.A. Inc.*, No. C04-04276, 2005 U.S. Dist.

11  LEXIS 21449, at *5 (N.D. Cal. July 25, 2005), *aff'd* 518 F.3d 1042 (9th Cir. 2008).

12       An antitrust plaintiff "may not merely recite the bare legal conclusion that competition has

13  been restrained unreasonably.  Rather, a claimant must, at a minimum, sketch the outline of the

14  antitrust violation with allegations of supporting factual detail."  *Les Shockley Racing v. Nat'l Hot*

15  *Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802,

16  810-11 (9th Cir. 1988)  ("conclusory allegations" of "antitrust injury to competition" cannot support

17  a Sherman Act claim); *Rutman Wine Co. v. E&J Gallo* Winery, 829 F.2d 729, 736 (9th Cir. 1987) .

18  In fact, both the Supreme Court and the Ninth Circuit have stressed the importance of insisting on

19  specificity in antitrust pleadings to avoid exposing defendants to potentially massive factual

20  discovery costs.  *See Twombly*, 127 S. Ct. at 1966-67 ("it is one thing to be cautious before

21  dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding

22  to antitrust discovery can be expensive") (citation omitted); *Found. For Interior Design Educ.*

23  *Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001) ("the price of entry

24  [into the federal courts], even to discovery, is for the plaintiff to allege a factual predicate concrete

25  enough to warrant further proceedings, which may be costly and burdensome") (internal quotation

26  marks omitted) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir.

27  1999)); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d at 1047.

28

1    When a Complaint does not satisfy all material elements of the claims asserted therein, it

2    should be dismissed, and the dismissal should be with prejudice if amendment would be futile.  *See*

3    *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996) ("[D]istrict courts need not accommodate futile

4    amendments").

5    **IV.    ARGUMENT**

6    **A.    Copart's Sherman Act Section 1 Claim against AASC Should Be Dismissed.**

7    This case has nothing to do with concerns about competition in a relevant market.  It is a

8    dispute over the price that AASC charges for access to a system that it created and controls.  In fact,

9    Copart admits in its Complaint that AASC provided it with the relevant price and terms to obtain

10   access to the AutoIMS system.  Thus, there is no group boycott or refusal to deal.  Because Copart

11   has failed to allege the elements essential to maintaining a group boycott claim, its Section 1 claim

12   must be dismissed.

13   To establish a Section 1 claim, a plaintiff must plead and ultimately prove: "(1) a contract,

14   combination or conspiracy among two or more persons or distinct business entities; (2) by which the

15   persons or entities intended to harm or restrain trade or commerce… (3) which actually injures

16   competition."  *Kendall,* 518 F.3d at 1047; *see also Rickards v. Canine Eye Registration Found., Inc.*,

17   783 F.2d 1329, 1332 (9th Cir. 1986); 15 U.S.C. § 1.  Copart's Section 1 claim is fatally deficient

18   because it does not allege facts sufficient to find a conspiracy and fails to allege that AASC

19   unlawfully restrained competition.

20   **1.    Copart's Sherman Act Section 1 Claim Should Be Dismissed Because It Fails to
        Allege a Conspiracy.**

21

22   To state a claim under Section 1 of the Sherman Act, Copart must do more than allege that

23   AASC, a single entity, refused Copart access to its AutoIMS system.  Among other things**,** Section 1

24   of the Sherman Act requires concerted action; it does not proscribe "conduct that is 'wholly

25   unilateral.'"  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) ; *see also*

26   *Twombly,* 127 S.Ct. at 1964 ("'the crucial question' is whether the challenged anticompetitive

27   conduct 'stems from independent decision or from an agreement'") (internal punctuation omitted)

28   (quoting *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)).  The

1   Supreme Court has emphasized that the "distinction between unilateral and concerted action is

2   *critical*." *Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986) (emphasis added); *see also Kline v.*

3   *Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974).  A claim under Section 1 "requires a

4   Complaint with enough factual matter (taken as true) to suggest that an agreement was made."

5   *Twombly*, 127 S. Ct. at 1958.  To establish a violation under Section 1, Copart must prove that *each*

6   of the alleged conspirators had a "conscious commitment to a common scheme designed to achieve

7   an unlawful objective."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984); *see also*

8   *Les Shockley Racing*, 884 F.2d at 507 (holding a plaintiff must prove "an agreement or conspiracy

9   among two or more persons or distinct business entities") (quoting *Oltz v. St. Peter's Cmty. Hosp.*,

10  861 F.2d 1440, 1445 (9th Cir. 1988)) .

11          Here, Copart has failed to allege either (1) direct evidence of an anticompetitive conspiracy

12  between the parties or (2) circumstantial evidence sufficient to exclude the possibility that the

13  decision was unilateral.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.

14  21 (1986) (holding "conduct that is as consistent with permissible competition as with illegal

15  conspiracy does not, without more, support even an inference of conspiracy").  Copart does not

16  allege any facts to support its theory that AASC and its shareholders conspired or agreed with each

17  other to restrain trade.  Copart alleges that AASC is a joint venture owned by several of Copart's

18  horizontal competitors, but it fails to allege any facts to support an agreement between those

19  competitors to exclude Copart.  Copart alleges that AASC is "influenced," "supported," and

20  "motivated" to exclude Copart because AASC is owned by a consortium of horizontal competitors

21  (Complaint ¶ 16, 36, 56).  But these allegations are simply insufficient to plead an agreement.

22          Indeed, this Court dismissed a complaint with similarly deficient conspiracy allegations in

23  *Kendall v. Visa U.S.A. Inc.,* No. C04-04276, 2005 U.S. Dist. LEXIS 21449, at *5 (N.D. Cal. July 25,

24  2005).  In *Kendall,* plaintiff's only factual support for the alleged conspiracy were allegations that:

25  1) the bank defendants "'participat[ed] in the management of and [have] a proprietary interest in'

26  [VISA and MasterCard]," 2) Visa and MasterCard set interchange fees for its members, and 3) the

27  banks adopted the interchange fees set by Visa and MasterCard.  *See Kendall,* 518 F.3d at 1048.

28  Thus, even though members of the banks served on the board of directors of VISA and MasterCard

1    and had a proprietary interest in their success, these allegations, standing alone, were insufficient as

2    a matter of law to show a conspiracy between VISA, MasterCard, and the member banks.  In

3    affirming dismissal of the Complaint, the Ninth Circuit specifically cited the plaintiffs' failure to

4    provide "facts to support their theory that the Banks conspired or agreed with each other."  *Id.*

5         Copart's other vague allegations do not help its conspiracy claim.  Merely alleging, on

6    information and belief, that a current *or* former Manheim employee is a senior officer of AASC

7    (Complaint, ¶ 56) does not provide factual support to a conspiracy claim any more than the

8    allegations that bank defendants participated in the management of Visa did in *Kendall*.  Similarly,

9    the allegation that an unnamed officer from an unnamed vehicle auction company told an unnamed

10   "industry executive" that AutoIMS was designed to be a "moat around our castle" does not provide

11   evidence of the who, what, where and when of the alleged conspiracy to exclude Copart.  *Kendall*,

12   518 F.3d at 1048 (upholding dismissal of complaint when, "the Complaint does not answer the basic

13   questions: who, did what, to whom (or with whom), where, and when); *see also Twombly,* 127 S. Ct.

14   at 1970; *Garshman v. Universal Res. Holding, Inc.*, 824 F.2d 223 (3d Cir. 1987)  (holding overly

15   vague allegations of antitrust violations will not survive a motion to dismiss).  Copart's undeveloped

16   and unsupported conspiracy claims are precisely the type of conclusory allegations that cannot

17   survive a motion to dismiss.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)  (on a motion to dismiss

18   courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Kendall,*

19   2005 U.S. Dist. LEXIS 21449, at *5 (holding court is not "bound to accept as true conclusory

20   allegations of law or legal conclusions couched as a factual allegation."); *DM Research, Inc. v. Coll.*

21   *of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).

22        To the extent that Copart relies on AASC's status as a joint venture to allege a conspiracy,

23   the allegations are plainly insufficient.  *See Kendall,* 518 F.3d at 1048 (holding "[e]ven participation

24   on [an] association's board of directors is not enough by itself" to constitute a Section 1 violation);

25   *see also Kline,* 508 F.2d 226 (holding membership in an association does not render an association's

26   members automatically liable for antitrust violations committed by the association); *AD/SAT, Div. of*

27   *Skylight, Inc. v. Associated Press,* 181 F.3d 216 (2d Cir. 1999)  (holding status as joint venture

28   members insufficient to establish anticompetitive conspiracy).  Copart does not allege that AASC's

1    formation as a joint venture was anticompetitive.  Far from it – Copart alleges that AutoIMS

2    provides: "a single compatible and standardized system [that] is much more valuable to connect the

3    many hundreds of fleet and finance companies with the vehicle auction companies."  (Complaint ¶

4    32).  It is axiomatic that AASC must, as a legitimate core function of its business, determine who,

5    and at what price, it conducts its business.  *See Texaco Inc. v. Dagher,* 547 U.S. 1 (2006)  (holding

6    "a joint venture, like any other firm, must have the discretion to determine the prices of the products

7    that is sells").  The fact that Copart does not like the terms and price offered by AASC does not,

8    without more, turn a business decision by AASC into a conspiracy among its shareholders.

9        Because Copart has failed to allege facts sufficient to find a conspiracy between separate and

10   distinct legal entities, its Section 1 claim must be dismissed.

11           **2.    Copart Also Fails to Allege an Unlawful Restraint of Trade.**

12       AASC has not unlawfully restrained competition in violation of Section 1 because it has not

13   refused to deal with Copart.  To state a valid Section 1 claim for a group boycott or concerted refusal

14   to deal, the plaintiff must show "(1) a firm demand by the plaintiff to deal with the defendants and

15   subsequent *refusal* by the defendants to deal with the plaintiff; and (2) evidence of a conspiracy,

16   concerted decision or agreement by the defendants not to deal with plaintiff."  *Go-Video, Inc. v.*

17   *Matsushita Elec. Indus. Co. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)* No. MDL-

18   765, 1990 U.S. Dist. LEXIS 19207, at *66 (D. Ariz. July 26, 1990) (emphasis added); *see also*

19   *Lawlor v. Nat'l Screen Serv. Corp.*, 270 F.2d 146, 154 (3d Cir. 1959) ; *Moccio v. Cablevision Sys.*

20   *Corp.*, 208 F. Supp. 2d 361, 379 (E.D.N.Y. 2002) (requiring impermissible agreement "that

21   constitutes an unreasonable restraint of trade"); *Fuentes v. S. Hills Cardiology*, 946 F.2d 196, 202

22   (3d Cir. 1991)  (holding "[a] classic boycott involves concerted action 'with a purpose either to

23   exclude a person or group from the market...'") (quoting *Pa. ex. rel. Zimmerman v. Pepsi Co., Inc.*,

24   836 F.2d 173, 183 (3d Cir. 1988) ).  Thus, "[g]roup boycotts disadvantage 'competitors by either

25   directly denying or persuading or coercing suppliers or customers to deny relationships the

26   competitor needs in [the] competitive struggle.'"  *Nationwide R.A.C. Sales, Inc. v. Ford Motor Co.*,

27   No. C96-2877, 1997 U.S. Dist LEXIS 1808, at *10 (N.D. Cal. Feb. 20, 1997) (quoting *Nw.*

28   *Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985) ).

1    Copart does not allege that AASC has refused to deal with Copart.  Moreover, Copart's

2    allegation that AASC's terms of access are "tantamount to a denial of access" completely lacks

3    factual support. Copart does not include any allegations concerning what AASC's other customers

4    pay or how the fee is tantamount to a denial of access.  It does not allege that Copart could not afford

5    the fee or that such an arrangement would be unprofitable.  Copart merely alleges *ipse dixit* that

6    AASC's allegedly quoted fee of $50,000 per auction location is "tantamount to a denial of access."

7    It does not even allege – because it cannot – that AASC required, as a condition of access, that

8    Copart sign up all of its 132 *salvage* auction locations in order to start receiving *whole-car*

9    assignments from AASC consignor customers.[1]  Courts have specifically rejected group boycott

10   claims based on price alone.  *See e.g., Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195,

11   1206 (7th Cir. 1981)  (holding no group boycott claim when defendant refused to pay

12   supracompetitive prices for services); *see also Custom Auto Body, Inc. v. Aetna Cas. & Sur. Co.*, No.

13   78-0301, 1983 U.S. Dist LEXIS 14941 (D.R.I. Aug. 3, 1983)  (same).  Because Copart fails to set

14   forth the fundamental allegations necessary for the Court to even entertain a group boycott claim, its

15   Section 1 claim must be dismissed.  *See e.g., ASA Accugrade, Inc. v. Am. Numismatic Ass'n.*, 370 F.

16   Supp. 2d 213, 217 (D.D.C. 2005) (dismissing Complaint for failure to plead sufficient "facts to

17   establish that there even was a 'boycott' by defendants").

18        **B.    Copart's Section 2 Claim against AASC Should Be Dismissed.**

19        Copart's Section 2 claim for denial of access to an alleged "essential facility" fails as a matter

20   of law for two reasons:  1) Section 2 does not impose a duty to deal with a rival absent extenuating

21   circumstances that are not present here, and 2) Copart fails to allege that AASC competes in the

22   relevant market that it allegedly "monopolizes."  To establish a Section 2 claim, a plaintiff must

23   plead and ultimately prove: "(1) possession of monopoly power in the relevant market; (2) willful

24   acquisition or maintenance of that power; and (3) causal 'antitrust' injury." *Transamerica Computer

25   Co. v. Int'l Bus. Machs.*, 698 F.2d 1377, 1382 (9th Cir. 1983) ; 15 U.S.C. § 2.  Because Copart has

26

27

28   _____

[1] Thus, its oft-quoted initial fee of $6.6 million is unsupported by the factual allegations.

1   failed to allege the elements essential to maintaining a Section 2 violation, its claim must be

2   dismissed.

3       **1.      There is No Independent Legal Duty to Deal with Any Entity without a Prior
                Course of Voluntary Dealing.**

4

5           First and foremost, Copart's monopolization claim fails because it is based on a theory that

6   has been soundly rejected by the U.S. Supreme Court.  Copart is alleging a unilateral refusal to deal

7   by AASC but does not allege any prior course of dealing – this same theory was rejected in *Trinko,*

8   540 U.S. 398.  The U.S. Supreme Court and the Ninth Circuit have consistently held that generally

9   "the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged

10  in an entirely private business, freely to exercise his own independent discretion as to parties with

11  whom he will deal.'"  *See Trinko,* 540 U.S. at 408 (quoting *United States v. Colgate & Co.*, 250 U.S.

12  300, 307 (1919)); *see also Metronet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004).

13  While the right is not unqualified, a plaintiff seeking to impose Section 2 liability must plead and

14  prove very specific facts to support a finding of liability under the essential facilities doctrine.  *See*

15  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) (recognizing valid claim

16  under Section 2 when competitor terminated access to an essential facility after a voluntary course of

17  prior dealing).

18          Indeed, the Supreme Court has never even recognized the essential facilities doctrine and

19  "[has] been very cautious in recognizing such exceptions" to the general unqualified right to refuse

20  to assist a competitor.  *Trinko*, 540 U.S. at 408.  After *Trinko*, without a voluntary course of prior

21  dealing, there can be no liability for a unilateral refusal to deal, even if a facility qualifies as

22  "essential."  *See Metronet Servs.*, 383 F.3d at 1131-1134 (refusing to expand the essential facilities

23  doctrine without a voluntary course of prior dealing and evidence of anticompetitive malice); *see*

24  *also Covad Commc'ns Co. v. BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004) (holding

25  "*Trinko* now effectively makes the unilateral termination of a voluntary course of dealing a

26  requirement for a valid refusal-to-deal claim under *Aspen*"); *Covad Commc'ns Co. v. Bell Atl. Corp.*,

27  398 F.3d 666, 673 (D.C. Cir. 2005)  (affirming dismissal of claim where Covad failed to allege a

28  prior course of voluntarily dealing).

---

AASC'S NOTICE OF MOTION AND MEMORANDUM                                      CASE NO. CV-08-3393-JSW
IN SUPPORT OF MOTION TO DISMISS

1    Here, Copart fails to allege any facts that create the extenuating circumstances necessary to

2    establish a legal duty to deal with a competitor.  AASC and Copart do not have a prior history of

3    voluntary dealings; in fact, Copart has not alleged that AASC and Copart have ever engaged in any

4    prior commercial relationship.  *See Covad Commc'ns Co. v. BellSouth Corp.,* 374 F.3d at 1049

5    (holding no essential facilities claim without allegations of prior voluntary dealings between the

6    parties).

7    Additionally, the rationale expressed by the U.S. Supreme Court for denying the Section 2

8    claim in *Trinko* is equally applicable here.  In *Trinko,* the Court explained that "[e]nforced sharing

9    also requires antitrust courts to act as central planners, identifying the proper price, quantity, and

10   other terms of dealing—a role for which they are ill suited."  *Trinko*, 540 U.S. at 408.  Here, Copart

11   demands that this court set the terms by which AASC must do business with Copart.  This is exactly

12   the type of court intervention in *Trinko* sought to avoid.

13   Because Copart has failed to allege facts sufficient to establish the extenuating circumstances

14   needed to assert a viable post-*Trinko* claim for essential facilities, it must be dismissed.

15       **2.**    **Copart's Complaint Fails to Allege a Section 2 Claim under any Theory.**

16

17   Copart also fails to allege the other essential elements of a Section 2 claim.  To state a

18   Section 2 claim, Copart must plead facts sufficient to establish possession of monopoly power in the

19   relevant market and facts sufficient to show "'willful acquisition or maintenance' of the monopoly

20   power.'"  *Transamerica Computer Co.,* 698 F.2d at 1382.  Copart has failed to plead factual

21   allegations sufficient to establish: 1) AASC's power in the relevant market or 2) how AASC is

22   acquiring or maintaining a monopoly through its alleged actions.

23   Copart defines the relevant market as "vehicle auction services utilized by fleets and finance

24   companies to consign used vehicles for resale."  (Complaint, ¶ 30).  But it is clear from the

25   Complaint that AASC does not even compete in this market.  Indeed, AASC is a technology

26   company that created an inventory management product used by consignors of used vehicles and by

27   vehicle auction companies.  AASC does not itself have any auctions.  Thus, it does not compete with

28   Copart in the alleged relevant market, and has no market share or market power in the relevant

---

1   market.  Without market share in excess of 50%, courts are virtually universal in finding a lack of

2   market power and no monopoly.  *See e.g., United States v. E.I. duPont de Nemours & Co.*, 351 U.S.

3   377, 402-04 (1956).

4           Copart appears to base its Section 2 claim on the allegation that AASC "controls access to an

5   essential input for effective competition in the relevant market."  (S*ee, e.g*., Complaint, ¶ 51).  But

6   without showing that AASC "is a *monopolist* with control over a facility that is 'essential,'" *Paladin*

7   *Assoc., Inc. v. Mont. Power Co.,* 328 F.3d 1145, 1162 n. 21 (9th Cir. 2003) (emphasis added)), there

8   can be no essential facilities claim, and therefore, no Section 2 violation.

9           In addition, Copart makes no attempt to explain how AASC's alleged denial of access to

10  Copart will enhance or maintain AASC's non-existent monopoly power.  This demonstrates the fatal

11  flaw in Copart's Section 2 claim – Copart has filed a Section 2 claim against a company that does

12  not compete in its defined relevant market; therefore it cannot show that AASC has a monopoly or

13  will maintain or acquire a monopoly in the relevant market.

14          If Copart intends to state a claim for conspiracy to monopolize, it also fails.  To state a claim

15  for conspiracy to monopolize, Copart must plead facts sufficient to show:  (1) the existence of a

16  conspiracy, (2) an overt act in furtherance of the conspiracy, and (3) a specific intent to monopolize.

17  *See e.g., United States v. Yellow Cab Co.*, 332 U.S. 218, 225 (1947).  In addition to its failure to

18  allege facts sufficient to establish a conspiracy, Copart alleges no facts to support a specific intent by

19  AASC to monopolize the alleged relevant market.

20          **C.      Copart's Sherman Act Claims Should Be Dismissed Because It Fails to Allege
21                   Facts to Support the Existence of its Alleged Relevant Market.**

22          To establish either a Section 1 or a Section 2 claim, the plaintiff must identify the relevant

23  product market in which the alleged anticompetitive conduct took place.  Simply put, "[w]ithout a

24  definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy

25  competition."  *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).

26  Courts have held that the relevant market has two dimensions:  (1) the relevant product market,

27  which identifies the products or services that compete with each other, and (2) the relevant

28  geographic market, which identifies the geographic area within which competition takes place.

1    *Brown Shoe Co.*, 370 U.S. at 324.  Copart does not provide factual support for either its product or

2    geographic market definitions and therefore its antitrust claims must fail.

3         While Copart purports to identify both a relevant product market and geographic market, it

4    fails to provide sufficient factual allegations to support its conclusory statements.  To set forth a

5    proper market definition, and avoid dismissal, a plaintiff must allege facts concerning relevant

6    substitutes, "distinguish among apparently comparable products, [and] allege other pertinent facts

7    relating to cross-elasticity of demand."  *Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*,

8    166 F. Supp. 2d 891, 896 (S.D.N.Y. 2001) (quoting *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health*

9    *Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993)); *see also Elecs. For Imaging, Inc. v. Coyle*, No.

10   C01-4853, 2005 WL 1661958, at *3 (N.D. Cal. July 14, 2005) (granting motion to dismiss because

11   plaintiff's description of the relevant market "is nothing more than a legal conclusion that assumes

12   such a market exists").  In its Complaint, Copart defines the relevant market as "vehicle auction

13   services utilized by fleets and finance companies to consign used vehicles for resale."  (Complaint, ¶

14   30).  But its factual allegations concerning cross-elasticity of demand and substitute products are

15   oddly not directed at that market; they are directed towards AASC's inventory management product,

16   AutoIMS.[2]  As a result, the Complaint has no factual allegations that support a finding of a product

17   market that consists of vehicle auction services for fleets and finance companies, or a geographic

18   market of the United States.  In fact, Copart's other factual allegations belie its narrow market

19   definition.  The Complaint describes a "vehicle auction industry" that "provides commercial vehicle

20   sellers an outlet to sell whole-car and salvage motor vehicles."  (Complaint, ¶ 38).  Nowhere is there

21   any factual support for narrowing that market to only auctions that provide services to fleets and

22   finance companies.

23        This defect becomes apparent in Copart's other market allegations.  For example, Copart

24   alleges that "there is no suitable substitute product that fleets or finance companies can use to

25   _____

26   [2]  Paragraph 35 of Copart's Complaint states: "…There is a lack of reasonably interchangeable
     alternatives to AutoIMS. . . . Because of the lack of suitable substitute products there is no cross

27   elasticity of demand between AutoIMS and any alternative product."  (Complaint, ¶ 35).  These
     are the very allegations that should have been included with regards to the relevant product market

28   alleged by Copart.

1    consign vehicles to various competing vehicle auctions." (Complaint, ¶ 35). But, as is obvious from

2    Copart's claimed success, Copart does not need AutoIMS to get salvage assignments from insurance

3    companies. And there are no allegations that used car dealers or other types of sellers do not have

4    other options. Importantly, Copart does not provide any facts, or even a theory, to explain why

5    auction services provided to fleets and finance companies are distinct in any way (pricing, services,

6    etc.) from auction services provided to other sellers of used vehicles. Copart cannot merely allege a

7    market that happens to include only AASC's customers without any factual support whatsoever.

8    According to its Complaint, Copart has done very well in the salvage auction business without

9    AutoIMS access. (Complaint ¶ 45, 46). Copart must do more than allege in conclusory fashion an

10   auction services market in which Copart's 132 salvage auctions are conveniently excluded.

11   Ultimately, Copart's failure to allege facts to support its market definition proves fatal to both its

12   Section 1 and 2 claims.

13
14
     **D.**     **Copart's Sherman Act Claims Should Be Dismissed Because It Fails To Allege Facts Sufficient to Establish Antitrust Injury.**

15        Copart cannot support either a Section 1 or Section 2 claim because it fails to allege antitrust

16   injury in the relevant market flowing from AASC's offer of access to Copart. "A plaintiff may only

17   pursue an antitrust action if it can show antitrust injury." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of*

18   *Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (internal quotation marks omitted). Individual harm to a

19   single competitor, however, is insufficient to establish anticompetitive harm because the Sherman

20   Act is designed for "the protection of competition, not competitors." *Brown Shoe Co. v. United*

21   *States*, 370 U.S. 294, 320 (1962). Here, Copart only pleads injury to a single plaintiff that flows

22   from a contract dispute, not harm to competition generally, which is the *sine qua non* of the antitrust

23   laws. *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 807 (6th Cir. 1988); *see also*

24   *Am. Ad Mgmt., Inc.,* 190 F.3d at 1055.

25        Copart's factual allegations regarding the alleged harm to competition are all based on

26   AASC's alleged refusal to deal with Copart. But it was Copart, not AASC, that refused to deal on

27   the terms provided. So it is the alleged injury to Copart's bottom line (at the terms provided), not

28   competition, that forms the basis of Copart's claims. Any injury to competition flowing from

1   Copart's decision to reject access on the terms offered cannot be ascribed to AASC.  This is simply

2   not the kind of injury the antitrust laws were designed to protect. *Am. Ad Mgmt., Inc.*, 190 F.3d at

3   1055 (holding plaintiff must prove "injury of the type the antitrust laws were intended to prevent and

4   that flows from that which makes defendants' acts unlawful" (quoting *Brunswick Corp. v. Pueblo*

5   *Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

6       Under Copart's misguided theory, any party that does not receive favorable terms from a

7   joint venture would be empowered to bring a group boycott or essential facilities claim to extort a

8   better deal.   There is no case law to support this proposition.  *See e.g., Associated Gen. Contractors*

9   *of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526-27 (1983) (concluding alleged

10  conduct might constitute a breach of contract [or other unlawful act] . . ., but in the context of the

11  bargaining relationship between the parties to this litigation, such activities are plainly not subject to

12  review under federal antitrust laws").  Copart simply did not like the price offered by AASC for

13  access to AutoIMS.  Because Copart has failed to allege facts sufficient to find antitrust injury, both

14  its Section 1 and Section 2 claims must be dismissed.

15      **E.    Copart's Pendant State Law Claims Fail Because They Are Premised Upon the**
16      **Federal Antitrust Law Violations.**

17      Each of Copart's three state law claims require maintenance of an underlying federal antitrust

18  violation.  Therefore, upon dismissal of Copart's Section 1 and Section 2 claims, these related state-

19  law claims must be dismissed.

20      First, California's Cartwright Act set forth in Cal. Bus. & Prof. Code § 16720 is modeled

21  after Section 1 of the Sherman Act.  Thus, if there is no violation of Section 1, there can be no

22  violation of California's Cartwright Act.  *See e.g., Suburban Mobile Homes, Inc. v. AMFAC Cmtys.,*

23  *Inc.*, 161 Cal. Rptr. 811, 815 (Cal. Ct. App. 1980) ("federal cases interpreting the Sherman Act are

24  applicable to problems arising under the Cartwright Act"); *see also Corwin v. L.A. Newspaper Serv.*

25  *Bureau, Inc.,* 484 P. 2d 953, 959 (Cal. 1971).  Therefore, Copart's Cartwright Act claim must be

26  dismissed for the same reasons its Section 1 claim should be dismissed—because it failed to allege

27  facts sufficient to establish a conspiracy between the parties, a refusal to deal, a relevant market, or

28  antitrust injury.

1    Second, California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200-

2    17210 *et seq*. states that "unfair competition shall mean and include any unlawful, unfair or

3    fraudulent business act or practice." *Id.* at §17200.  Thus, Copart must allege facts sufficient to

4    establish AASC engaged in unlawful, unfair, or fraudulent business practices.  In applying the UCL,

5    California courts have found that activities permissible under the antitrust laws cannot be deemed

6    unfair under the UCL.  *See Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2001);

7    *see also Morrison v. Viacom, Inc.*, 78 Cal. Rptr. 2d 133, 135 n. 1 (Cal. Ct. App. 1998) (reasoning

8    when brought together, UCL claim is only viable to the extent of the Cartwright Act violation).  In

9    its Complaint, Copart does not allege any fraudulent business practices; instead, it bases its entire

10   17200 claim upon its Sherman Act Section 1 and 2 claims.  Therefore, upon dismissal of the Section

11   1 and 2 claims, Copart's pendant claims under California's UCL must be dismissed.

12   Finally, Copart alleges AASC intentionally interfered with its future economic relationships.

13   Under California law, a plaintiff alleging the tort of intentional interference with prospective

14   advantage must allege and prove an underlying wrong, which is specifically defined as unlawful

15   behavior that is "proscribed by some constitutional, statutory, regulatory, common law, or other

16   determinable legal standard."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal.

17   2003) (holding plaintiff must plead that the defendant engaged "in an act that is wrongful apart from

18   the interference itself").  Id at 950.  Copart's intentional interference claim is based entirely on its

19   federal antitrust claims; thus, after dismissal of these underlying claims, its intentional interference

20   claim fails as a matter of law.

21                          **V.    CONCLUSION**

22   For the foregoing reasons, Copart's Complaint fails to properly state any cause of action.  Its

23   federal antitrust claims do not include the factual support required to survive a motion to dismiss.

24   As a result, its pendant state law claims, which are dependant upon a proper underlying federal

25   antitrust claim, must also be dismissed.  Therefore, the Complaint should be dismissed in its entirety

26   with prejudice.

27

28

1    Respectfully submitted.

2    Date: August 25, 2008.

3                                        By:    _____/s/_____

4                                               Elizabeth H. Rader (SBN 184963)
                                                elizabeth.rader@alston.com
5                                               ALSTON & BIRD LLP
                                                Two Palo Alto Square
6                                               3000 El Camino Real, Suite 400
                                                Palo Alto, California  94306
7                                               Tel: (650) 838-2000

8                                               Valarie Williams
                                                *Pending Pro Hac Vice Admission*
9                                               valarie.williams@alston.com
                                                ALSTON & BIRD LLP
10                                              One Atlantic Center
                                                1201 West Peachtree Street
11                                              Atlanta, Georgia 30309-3424
                                                Tel:  (404) 881-7000
12                                              Fax:  (404) 881-7777

13                                              Attorneys for Defendant
                                                AUTO AUCTION SERVICES CORP.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28